STATE OF NORTH CAROLINA v. PATRICK MARK McKOY AND LAWRENCE L. HARRISON

No. 8512SC193

(Filed 31 December 1985)

**Criminal Law § 34.1— defendant's guilt of other offenses—inadmissibility to show disposition to commit offense**

    In a prosecution for felonious breaking or entering and felonious larceny, the trial court erred in allowing the prosecutor to question an accomplice who had entered into a plea bargain about other break-ins he had committed with either of the defendants, since such evidence would have been admissible if offered for some purpose other than to show that, because defendants were peo-

ple of criminal character, it was more probable that they committed the crime for which they were on trial, but the State made no effort in this case to explain the permissible purpose for which the evidence was offered; ten months elapsed between the incident for which defendants were being tried and the time the accomplice made his statement to police; in that statement the accomplice denied participating in other breakings and enterings with defendants; the answers the accomplice gave on the stand were confusing and unresponsive; and the probative value, if any, of the evidence was slight and the only ascertainable purpose was to attribute a criminal disposition to defendants.

Chief Judge HEDRICK dissenting.

APPEAL by defendants from *Brewer, Judge.* Judgments entered 5 October 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 25 September 1985.

Defendants were convicted by a jury of felonious breaking or entering and felonious larceny pursuant to a breaking or entering. Both defendants were sentenced to active terms of imprisonment, and both defendants appealed.

*Attorney General Thornburg, by Associate Attorney General Doris J. Holton, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Leland Quintin Towns, for defendant-appellant McKoy.*

*James R. Parish for defendant-appellant Harrison.*

PARKER, Judge.

The incident for which defendants were charged occurred on 26 July 1983. Defendants were indicted on 20 August 1984. The State's primary evidence was the testimony of one Thomas "Luke" Bowens, who was granted consideration as to sentencing on several charges pending against him in exchange for his testimony. Bowens testified that on 26 July 1983, he and the two codefendants had been at an arcade in a shopping center in Spring Lake, North Carolina. The three walked out behind the arcade, discussing their financial woes. Bowens testified that defendant Harrison was carrying a blue athletic bag and said he had a pair of bolt cutters. As the trio walked along behind the shopping center, they came upon the storage building for the Maxway Store located in the shopping center. Bowens took Harrison's bolt cutters and a screwdriver and broke into the building. The build-

ing was primarily used to house merchandise that had been put on layaway by Maxway customers. Bowens entered the building, looked around, returned to the door and said "yo, we just got paid"; he then began handing microwave ovens and television sets to defendants. They took fourteen ovens and four television sets in all. After hiding the stolen items, the three split up. Bowens arranged for the sale of the items, and the three got back together to divide the money. Bowens testified that each person's share was approximately $600.

On 5 April 1984, Bowens was arrested for an unrelated crime. During the investigation of Bowens, the police realized that he could be a valuable source of information regarding a number of break-ins in the area and about a "fence" known as Sid. Bowens then entered into a plea arrangement in which he was promised no more than six years active time if he would cooperate and give information and ultimately testify about these other break-ins. Bowens agreed and as part of this arrangement made a statement concerning the Maxway break-in, which implicated the defendants and which was essentially the same as his trial testimony. Detective A. F. Payne of the Spring Lake Police Department took the statement and, at trial, read it into evidence.

The State's theory of the case was concerted action. Although the State's witness, Bowens, did the actual breaking and entering (his testimony conflicted as to whether defendants actually entered the shed), the State argued that defendants were equally guilty as they too possessed the requisite guilty knowledge and intent.

The sole argument[1] advanced by both defendants is that the trial judge erred in allowing the prosecutor to question Bowens about other break-ins he had committed with either of the defendants. Defendants assert that this was inadmissible evidence of character under G.S. 8C-1, Rule 404.

---

1. Defendant McKoy has asked this Court to consider an additional argument in his brief not assigned as error in the record on appeal. A motion to amend the record on appeal was denied by a panel of this Court. The issue raised by defendant McKoy has been decided adversely to him by this Court on numerous occasions and is currently before our Supreme Court for consideration. Therefore, we decline to consider this issue.

---

---

On direct examination of Bowens by the prosecutor, the following exchange took place:

Q. Had the three of you done anything like this before?

MR. MELVIN: Objection, your Honor.

COURT: Overruled.

(Witness shaking head.)

COURT: You may answer.

A. Answer?

COURT: Yes.

A. What you mean?

Q. Had you and Mr. Harrison and Mr. McKoy or any of you broken into places like this before?

MR. MELVIN: Objection.

COURT: Overruled.

A. No.

Q. Had you broken into anything—at homes or anything with these two, either of these two fellows before.

MR. MELVIN: Objection.

COURT: Overruled.

COURT: You may answer.

A. (Shook head negatively.) No.

Despite the negative response to this line of questioning, the prosecutor pursued it again on redirect, resulting in the following confusing exchange.

Q. Who broke into the pawn shop with you?

MR. MELVIN: Objection.

COURT: Overruled.

Q. Who went into the pawn shop with you?

A. The best of my knowledge? Harrison.

Q. The defendant, Mr. Harrison?

A. Yes.

Q. And you also broke into a house at 206 Holland Drive, home of Isabel Rodriguez, didn't you?

A. Who?

Q. You did.

A. Not that I can remember of.

Q. And you took a General Electric black and white television set, a Zenith nineteen inch color television set, and a Pioneer stereo, that was back in March of 1983?

A. Oh—I know what you're talking about.

Q. Okay.

A. No. They wasn't with me.

. . . .

Q. Do you remember Mr. McKoy being with you?

A. Not really.

Q. You don't remember breaking into a house with Mr. McKoy?

A. I remember breaking into a house. Not with him.

. . . .

Q. Now, Mr. Bowens, you remember back earlier in the year, when you were about to be tried for breaking into the Boulevard Pawn Shop?

A. Yes.

Q. That's the same pawn shop you said Mr. Harrison and you broke into—

MR. MELVIN: Objection, your Honor.

COURT: Overruled.

Q. —is that right?

A. Yes.

Q. And your lawyer and I had some discussions that resulted in a plea bargain for you, isn't that correct?

A. Yeah.

Q. Now, is that the plea bargain in which you were to plead guilty and get six years?

A. About that pawn shop?

Q. Um-hum.

A. I got probation for that pawn shop. Oh, you got the wrong pawn shop here.

Q. That's the pawn shop that you broke into.

A. Sir, I'm going to be honest with you. The way this went down, I don't know which charge I got tried for and which business I broke into. It was some of them.

Q. You broke into some of them?

A. Yeah.

Q. And you broke in with a lot of different people?

A. Quite—

Q. Are you sure that—and are you sure that you broke into this place with Mr. Harrison?

A. If that's what's on that paper, it has to be.

Q. Do you remember going in there with him?

A. Which pawn shop?

COURT: Repeat your question, Mr. Ammons.

Q. The pawn shop that you broke into with Mr. Harrison, do you remember which pawn shop that was?

A. (Pause.) I think so.

Q. Which pawn was it?

A. It's three Braggs. Bragg—I broke in all three of them with different people.

Q. In any event, do you remember pleading guilty in the case in which you broke into a pawn shop with Mr. Harrison?

MR. MELVIN: Objection, your Honor. He's answered that.

COURT: Overruled.

A. (Pause.) I remember pleading guilty to the pawn shop that I broke into. See, I broke into Bragg by myself, too, now.

Q. That's not the one you broke into with Mr. Harrison?

A. I don't think it is.

The trial of this case took place on 1 October 1984; therefore, the North Carolina Rules of Evidence codified in Section 8C-1 of the General Statutes and effective beginning 1 July 1984 were applicable. Rule 404(b), G.S. 8C-1 reads as follows:

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

This rule is identical to Rule 404(b) of the Federal Rules of Evidence, except for the addition of the word "entrapment," which is not relevant here. The first sentence of Rule 404(b) creates a presumption that evidence of other crimes is inadmissible, but the second sentence allows its admission upon a showing by the State that this evidence is reasonably necessary for a specific permissible purpose. The only requirement for such evidence to be admissible is that it be offered for purposes other than to show that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial. *See United States v. Diggs,* 649 F. 2d 731 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed. 2d 387 (1981). Clearly, then, the purpose for which the evidence is offered is of the utmost importance. McCormick on Evidence, Sec. 188 (3d ed. 1984). The connection between the evidence and its permissible purpose should be clear, and the issue on which the evidence of other crimes is said to bear should be the subject of genuine controversy. *Id.,* Sec. 190.

Evidence of other crimes may be extremely prejudicial as it focuses attention of the jurors on the defendant as a person deserving punishment rather than on the evidence necessary to prove the charge for which the defendant is being tried. Therefore, the probative value must be weighed against this potential for prejudice. As the Advisory Committee's Note to the Federal Rule states:

> Subdivision (b) deals with a specialized but important application of the general rule excluding circumstantial use of character evidence. Consistently with that rule, evidence of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for another purpose, such as proof of motive, opportunity, and so on, which does not fall within the prohibition. In this situation the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403.

Moreover, the prohibition on evidence of other crimes is said to have constitutional implication as due process requires that a person be convicted, if at all, of the particular crime charged and not for other crimes or simply because of who he is. *See United States v. Foskey,* 636 F. 2d 517, 523 (D.C. Cir. 1980).

In the case before us, the State has made no effort to explain the permissible purpose for which the evidence was offered. Ten months lapsed between the incident for which defendants were being tried and the time Bowens made his statement to the police. Moreover, in that statement Bowens denied participating in other breakings and enterings with defendants. The answers Bowens gave on the stand were confusing and unresponsive. Under these circumstances, the probative value, if any, of the evidence was slight and the only ascertainable purpose was to attribute a criminal disposition to defendants. We do not agree with the State that the challenged testimony was not prejudicial since Bowens answered the questions negatively. The manner in which

State v. McKoy

the prosecutor led the witness was tantamount to the prosecutor testifying. By convicting defendants, the jury obviously believed some part of the State's evidence. This Court cannot speculate as to the weight given by the jury to inadmissible testimony.

In our view the evidence was inadmissible and prejudicial to defendants and defendants are, therefore, entitled to a

New trial.

Judge BECTON concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

My colleagues in their majority opinion have awarded both defendants new trials finding that the trial judge erred to each defendant's prejudice in allowing the district attorney to ask the State's witness if he and the defendants had broken into places other than the Maxway Store and if he had broken into a pawn shop with defendant Harrison.

The assignment of error upon which defendant McKoy relies is set out in the record as follows: "The trial court erred in allowing the State to question Thomas Bowen with respect to whether he, the defendant, and co-defendant Harrison had participated together in other break-ins because such testimony amounted to evidence suggesting prior criminal conduct." Defendant McKoy's assignment of error is based on his exception to the following:

Q: Had the three of you done anything like this before?

MR. MELVIN: Objection, your Honor.

COURT: Overruled.

(McKoy Exception No. 1)

(Witness shaking head.)

COURT: You may answer.

A: Answer?

COURT: Yes.

A: What do you mean?

Q: Had you and Mr. Harrison and Mr. McKoy or any of you broken into places like this before?

MR. MELVIN: Objection.

COURT: Overruled.

(McKoy Exception No. 2)

A: No.

Q: Had you broken into anything—at homes or anything with these two, either of these two fellows before.

MR. MELVIN: Objection.

COURT: Overruled.

(McKoy Exception No. 3)

COURT: You may answer.

A: (Shook head negatively.) No.

Since the witness testified that defendant McKoy had not committed other crimes with him, the witness, it is inconceivable to me that defendant McKoy suffered any prejudice from the questions to which he now takes exception. Under the circumstances of this case, however, it is my opinion that the trial court did not err in overruling defendant's general objections to the question excepted to. By feeding defendants out of the same spoon, the majority has overlooked the fact that the court might have committed prejudicial error with respect to one defendant and not with respect to the other. Although it is not true in the present case, it is possible for one defendant to be entitled to a new trial without awarding a new trial to the other defendant.

By Assignments of Error Nos. 1, 2 and 3, defendant Harrison contends that the trial court erred in allowing the State's witness to testify about other crimes allegedly committed by Harrison. Defendant Harrison's assignments of error are based on exceptions to the court's allowing the district attorney to question the witness Bowens as to whether he and Harrison had broken into a pawn shop. I note that when the State's witness first testified on direct, no evidence of Bowens' having committed other crimes with either defendant was admitted. He was, however, asked on direct whether he, Bowens, had broken into the Cash Pawn Shop.

Defendant's objection to this question was sustained. On cross-examination by defendants the witness was asked about numerous other crimes, including breaking or entering, that he had committed. In particular, he was asked by defendants' counsel whether he had broken into a pawn shop. On redirect examination, the district attorney began to question the witness about his having broken into a pawn shop with defendant Harrison. To this line of questioning, defendant Harrison interposed a general objection. The witness was allowed to answer the question and ultimately testified that he did break into a pawn shop with Harrison. In my opinion, the court did not err in overruling defendant's objection because defendant had "opened the door" with respect to this line of questioning when he brought out the fact that the witness had indeed broken into a pawn shop.

It must be noted that defendant merely interposed a general objection to the district attorney's question about the witness breaking into a pawn shop with defendant Harrison. Rule 404(b) of the rules of evidence provides as follows:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

G.S. 8C-1, Rule 404(b). A general objection, if overruled, "is no good, unless, on the face of the evidence, there is no purpose whatever for which it could have been admissible." *State v. Ward*, 301 N.C. 469, 477, 272 S.E. 2d 84, 89 (1980).

In the present case, the evidence that the witness had committed another crime with defendant Harrison might have been admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." G.S. 8C-1, Rule 404(b). Had defendant desired to have the court make a ruling as to the specific reason or purpose the evidence was being offered, he should have interposed a specific objection, whereupon the trial judge could have conducted a voir dire to determine whether the probative value of the evidence outweighed its prejudicial effect. We then would have had some-

thing to review on appeal. In my opinion, the State was not under the burden of qualifying the testimony objected to under the circumstances of this case. In any event, however, I disagree with the majority that the trial judge erred in overruling defendant's general objection to the testimony. Furthermore, it is my opinion that under the circumstances of this case, no conceivable prejudice resulted from the admission of this evidence.

I am particularly concerned with the final paragraph of the majority opinion, because it seems to place the burden on the State to prove on appeal that the trial court did not err, while the contrary is the rule. The burden is on the appellant, not only to show error, but to show prejudicial error. Stated in another way, the trial court's rulings are presumed to be correct. The statement by the majority that "the State has made no effort to explain the permissible purpose for which the evidence was offered," carries the implication that the State, either at trial or on appeal, should explain for what purpose the evidence was admissible. In my opinion, this assertion by the majority ignores well established rules with respect to the conduct of both trials and appeals. Other portions of the final paragraph of the majority opinion seem to be passing on the credibility of the witness Bowens, which, of course, is for the jury, not for the appellate court.

I vote to find no error with respect to the trial of both defendants.