STATE OF NORTH CAROLINA
v.
ERIC BUCK
No. COA07-169
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Jane Hautin, for the State.
McAfee Law, P.A., by Robert J. McAfee, for defendant-appellant.
CALABRIA, Judge.
Eric Buck ("defendant") appeals from a judgment entered upon a jury verdict finding defendant guilty of the offense of resisting, delaying and obstructing a public officer in discharging a duty of his office. We find no error.
The State presented evidence showing the following: On 6 March 2004, Carteret County Sheriff's Deputy Reggie Pasteur ("Pasteur") went to defendant's home to serve defendant's cousin, Edgar Carson ("Carson"), with an ex parte domestic violence protective order since Pasteur was told Carson could be located at defendant's house. Pasteur testified that when he arrived at defendant's home, defendant was outside and started cursing, swearing and threatening Pasteur. Pasteur also testified defendant told him he had no reason to be on his property and that he was "going to hurt [Pasteur]." Pasteur explained that he was there to serve Carson with a domestic violence protective order, not defendant. Pasteur testified that during the time he tried to talk to defendant, defendant was located only about five inches from his face and used racially derogatory language toward Pasteur. Pasteur told defendant and his wife to call the sheriff's department if Carson returned to defendant's house so that Pasteur could serve the order.
Pasteur testified that after he turned to walk towards his patrol car, he heard a noise behind him and when he turned around he saw defendant "coming towards [him] with a shovel." Defendant said he was going to "kill [Pasteur] and smash [his] head in." Pasteur told him to put the shovel down and drew his gun. After three or four commands, defendant put the shovel down. When Pasteur told defendant he was under arrest for assault of a government official, defendant kicked, spat, and swung at him as he started placing defendant in restraints. Pasteur offered to place the handcuffs on defendant in the front, rather than behind the defendant's back, after defendant told him he had a medical condition. Defendant kicked Pasteur in the groin and "started fighting again." Pasteur used his pepper spray on defendant. Defendant's wife then hit Pasteur with her fist on the back of his head. Pasteur called for back-up. Pasteur testified he did not recall any shovel or rake lying on the ground. Carteret County Sheriff's Lieutenant James Ray Pittman, Jr. ("Pittman"), who responded to Pasteur's call for assistance, also testified at trial. Over defense counsel's general objection, Pittman testified that defendant had not been aggressive with Pittman but that defendant "had a problem with a neighbor." On cross-examination, defense counsel asked Pittman about the problem with the neighbor and whether defendant was "pretty fired up about his neighbor." Pittman testified defendant would be loud and "gets [sic] up in your face," that he "was aggressive towards his neighbor, which was probably giving him trouble" but that defendant never threatened or assaulted him.
Defendant presented evidence showing the following: Pasteur asked defendant if he knew Carson's location. Defendant asked if Pasteur had a warrant. Pasteur said he did not. Defendant said he told Pasteur to leave. Defendant said he did not remember any cursing at that point. Pasteur told defendant he did not have to leave, he did not need a search warrant and that he could go anywhere on defendant's property or in his house, and that defendant did not want to "try [him]." Defendant testified that as Pasteur approached his patrol car, he hit a shovel with his foot. Defendant picked up the shovel to place it against the wall and Pasteur reached for his gun. Defendant said Pasteur told him he was under arrest, tackled defendant and used pepper spray on him. Defendant denied using racial slurs toward Pasteur.
Defendant's wife, Karen Buck ("Mrs. Buck"), testified that defendant told Pasteur if he did not have a warrant, then he needed to leave. Mrs. Buck asked Pasteur for one of his cards so Carson could call Pasteur. Pasteur stepped towards Mrs. Buck and said he did not have any cards. Defendant told Mrs. Buck to step back and that Pasteur was "acting his true color, he was acting like a black bastard." Mrs. Buck testified that Pasteur said "you don't want to try me, boy" and turned to walk away. Mrs. Buck testified that Pasteur's foot hit a shovel as he was walking to his car. Defendant picked up a rake and reached to pick up the shovel. Pasteur turned around and shoved defendant.
Defendant's father-in-law, Leroy Weeks ("Weeks"), testified that he arrived at defendant's house and saw defendant restrained with one handcuff and Pasteur's knee was in his back. Weeks testified on direct that he had never known defendant to attack anybody. During cross-examination, the prosecution asked Weeks whether he knew that defendant had ever been charged with attacking someone. Defense counsel did not object to this question.
At the conclusion of the State's evidence, defendant moved to dismiss for insufficient evidence. The trial court denied the motion. Defendant moved to dismiss at the close of all the evidence, and the court again denied the motion.
During the charge conference, defense counsel requested a jury instruction that "if the jury decides under the circumstances that the arrest was not a lawful arrest, that the defendant had a right to resist. . . ." The grounds for finding an unlawful arrest were, according to defense counsel, that "the officer himself assaulted the defendant rather than the alternative." Defense counsel asked for an instruction that if the jury found that the officer initiated the attack on the defendant, then defendant had a right to resist the unlawful arrest. The trial court also considered an instruction that the arrest was lawful, but that resistence would be justified if the officer used excessive force. The trial court decided to instruct the jury that if they found the officer used excessive force, then defendant's resistence is excused. Defense counsel properly objected and asked the court to give instructions on the right to resist an unlawful arrest and the right to resist excessive force. The trial court told defense counsel that he could argue that defendant's arrest was an unlawful arrest under the element of whether the victim discharged a duty of his office, and that it would not be a duty of his office to effectuate an unlawful arrest. Defense counsel renewed his request to include a charge on the right to resist an unlawful arrest. At the charge conference, defendant moved for a directed verdict, which the trial court treated as a motion to dismiss at the close of all the evidence[1]. The trial court denied the motion.
The jury returned a guilty verdict for the resist, delay, and obstruct charge; however, the defendant was acquitted of assault with a deadly weapon against a government official. Defendant moved for a judgment notwithstanding the verdict[2] on the basis that the jury misunderstood the resisting arrest instruction. The court denied the motion. Defendant was sentenced to forty-five days in the custody of the Carteret County Sheriff. That sentence was suspended and the defendant was placed on supervised probation for twenty-four months. Defendant appeals.

I. Jury Instructions
Defendant argues the trial court erred in failing to instruct as requested on the defense of resisting unlawful arrest. We disagree.
"A trial court must give a requested instruction that is a correct statement of the law and is supported by the evidence. The trial court need not give the requested instruction verbatim, however; an instruction that gives the substance of the requested instructions is sufficient." State v. Conner, 345 N.C. 319, 328, 480 S.E.2d 626, 629 (1997) (internal citations omitted). "The trial judge has wide discretion in presenting the issues to the jury." State v. Harris, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982) (citation omitted). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." State v. Mash, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citations omitted).
First, we consider whether the evidence viewed in the light most favorable to the defendant supported defendant's requested jury instruction on the charge of resisting unlawful arrest. The defendant testified that he told the officer "[he] need[ed] to leave" defendant's property because the officer did not have a warrant and that the officer tackled him after defendant picked up a shovel that was lying on the ground. Viewed in the light most favorable to the defendant, the evidence is sufficient to support a defense that the arrest was unprovoked or unlawful. Mash, 323 N.C. at 348, 372 S.E.2d at 537.
A trial court is not required to give a verbatim instruction as requested, for "it is sufficient if the court gives the instruction in substantial conformity with the request." State v. McNeill, 346 N.C. 233, 239, 485 S.E.2d 284, 288 (1997). In McNeill, the defendant was tried for first-degree murder under the felony murder rule; burglary constituted the underlying felony. 346 N.C. at 235-36, 485 S.E.2d at 286. Defendant requested that the instruction inform the jurors "that if they found defendant not guilty of first-degree burglary or guilty of non felonious breaking and entering, they could not consider the charge of first-degree murder under the felony murder rule." Id., 346 N.C. at 238, 485 S.E.2d at 287. Instead, the trial court instructed the jury as follows:
So, I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant broke and entered an occupied dwelling house without the tenant's consent during the night-time and at that time intended to commit murder, and that while committing burglary, the defendant killed the victim and that the defendant's act was a proximate cause of the victim's death, it would be your duty to return a verdict of guilty of first degree murder under the felony murder rule. However, if you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of first degree murder under the felony murder rule.
346 N.C. at 238-39, 485 S.E.2d at 287-88. The North Carolina Supreme Court held this instruction was in substantial conformity with the one requested, and found no error. Id., 346 N.C. at 239, 485 S.E.2d at 288.
The case sub judice is similar to McNeill. Here, defendant requested an instruction that if the jury found that the officer attacked defendant, and therefore the officer's arrest of defendant was unlawful, then defendant was justified in resisting arrest. Defendant requested instructions under both N.C. Pattern Jury Instructions Criminal 230.31 and 230.32.[3] The trial court instructed the jury on the elements of resisting arrest, which includes proof beyond a reasonable doubt that the public officer was attempting to discharge a duty, defined as an arrest with probable cause. The trial court gave the following instructions, which are nearly verbatim from N.C. Pattern Jury Instructions Criminal 230.32:
The defendant has been charged with resisting, delaying and obstructing an officer. Now, I charge that for you to find the defendant guilty of this offense, the state must prove five things beyond a reasonable doubt:
First, that the victim was a public officer. A deputy sheriff is a public officer.
Second, that the defendant knew or had reasonable grounds to believe that the victim was a public officer.
Third, that the victim was attempting to discharge a duty of his office. Attempting to arrest the defendant is a duty of a deputy sheriff. Under North Carolina law, an officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence.

Fourth, that the defendant resisted, delayed and obstructed the victim in attempting to discharge this duty.
Fifth, that the defendant acted willfully and unlawfully, that is, intensely and without justification or excuse.
The defendant's resistance, delay, and obstruction, if any, is excused if it was in response to excessive force by an officer because any such resistance, delay or obstruction in that event would not be unlawful. In attempting to make a lawful arrest, a deputy sheriff may use whatever force is apparently necessary to him and reasonable for that purpose. However, if an officer uses more force than is apparently necessary to him or more force than is reasonable  than is reasonable under all the circumstances, such force is excessive and unlawful. If Deputy Pasteur used more force than was apparently necessary to him or reasonable under all the circumstances, and if the defendant's resistance, delay and obstruction was to the excessive force used by Deputy Pasteur, then the defendant is not guilty of this offense. So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the victim was a public officer, that the defendant knew or had reasonable grounds to believe that the victim was a public officer, that the victim was attempting to discharge a duty of his office and that the defendant willfully and unlawfully resisted, delayed and obstructed the victim in attempting to discharge a duty of his office, it would be your duty to return a verdict of guilty. However, if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
(Emphasis added).
This instruction is in substantial conformity with the defendant's request because the instruction defines discharge of a duty of office as an attempt to arrest and in turn defines a lawful arrest as one where the officer has probable cause to believe the defendant committed a criminal offense. We find no error.

II. Admission of Pittman's Testimony
Defendant assigns as error the trial court's ruling on his general objection to Pittman's testimony in response to the prosecution's question about defendant's prior contact with Pittman on the basis that such testimony was irrelevant and impermissible character evidence admitted to prove acts in conformity with bad character.
We do not reach defendant's second assignment of error because although he timely objected, at the time of the objection he failed to state the specific grounds. N.C. R. App. P. 10(b)(1) (2007). Even if the grounds were apparent from the context, defendant later waived any objection by eliciting the same evidence from the witness on cross-examination. See State v. Whitley, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) (where evidence is admitted over objection and the same evidence is later admitted without objection, the benefit of the objection is lost). Because defense counsel elicited the same testimony on cross-examination without any effort to explain, impeach or "destroy its value," defendant's general objection is waived. See State v. Alford, 339 N.C. 562, 569-70, 453 S.E.2d 512, 516 (1995) (Defendant's objection waived where defense cross-examined witness on the same evidence without trying to explain, impeach or destroy its value).

III. Insufficient Evidence
Defendant next argues the trial court erred by denying his motions to dismiss on the basis of insufficient evidence. We disagree.
The standard of review on motions to dismiss for insufficient evidence is whether there is substantial evidence of each element of the offense charged. State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). Substantial evidence is any relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "[I]n considering a motion for nonsuit, the trial court must view the evidence in the light most favorable to the State, allowing the State every reasonable inference and intendment to be drawn from the evidence." State v. McDonald, 130 N.C. App. 263, 269, 502 S.E.2d 409, 414 (1998) (citation omitted). The elements of N.C. Gen. Stat. § 14-223 (2005) are "that the defendant willfully and unlawfully resisted, delayed, or obstructed a public officer, whom the defendant knew or had reasonable grounds to believe was a public officer, in discharging or attempting to discharge a duty of his office." State v. Bell, 164 N.C. App. 83, 94, 594 S.E.2d 824, 831 (2004) (citation omitted).
Defendant testified he saw Pasteur approach in a marked police car. Pasteur testified he told the defendant his reason for being on the property was to serve Carson with a domestic violence order, yet defendant approached him with a shovel, threatened to kill him, refused to put down the shovel until after three or four commands, and fought with Pasteur during the attempt to place him under arrest for assault on an officer. This is relevant evidence that a reasonable person might accept as adequate to support a conclusion that defendant violated N.C. Gen. Stat. § 14-223 (2005). Viewing the evidence in the light most favorable to the State, we find no error. McDonald, 130 N.C. App. at 269, 502 S.E.2d at 414.

IV. Plain Error
Defendant's final argument is that the trial court failed to exclude sua sponte the prosecutor's question to defendant's father-in-law about defendant's prior attack charge, on the grounds that the evidence is inadmissible under N.C. Rules of Evidence 404(b) or 609. We disagree.
Since defendant did not object to this question at trial, our review is limited to plain error analysis. N.C. R. App. P. 10(c)(4) (2007). "Plain error is an error which was so fundamentals to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Jones, 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (2000) (internal quotes omitted) (citation omitted). "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." Jones, 137 N.C. App. at 226, 527 S.E.2d at 704 (citation omitted).
Defendant asserts the alleged error occurred when defendant's father-in-law, Mr. Weeks, testified that "I've never seen [defendant] attack anyone physically." The State then asked, "You know he's been charged with attacking someone before?" Weeks answered, "Not as [sic] I know of." The State responded, "You didn't know that?" Weeks replied, "No."
We need not reach the question of whether the evidence is inadmissible under N.C. Rules of Evidence 404(b) or 609 because any alleged error in this case does not amount to plain error. Defendant has not established that absent this error, the jury would have reached a different result. Id. Any prejudicial effect is outweighed by Pasteur's testimony. This assignment of error is overruled.
No error.
Judges McCULLOUGH and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Motions for a directed verdict and for judgment notwithstanding the verdict are properly made in civil cases, pursuant to N.C. Gen. Stat. § 1A-1, Rule 50 (2005). The relief of a motion to set aside the verdict is available by motion for appropriate relief under N.C. Gen. Stat. § 15A-1411(c) (2005).
[2] The trial court treated defendant's motion as a "[m]otion to dismiss or motion for judgment notwithstanding the verdict or to dismiss after the verdict. . . ." Defendant preserved his assignment of error as to the motion to dismiss when he moved to dismiss at the close of all the evidence. See N.C. R. App. P. 10(b)(3) (2007).
[3] N.C.P.I.-Crim. 230.31 (2006) differs from N.C.P.I.-Crim. 230.32 (2006) in that N.C.P.I.-Crim 230.31 uses the language "victim was attempting to make a lawful arrest" instead of "victim was discharging or attempting to discharge a duty of his office." Both N.C.P.I.-Crim. 230.31 and 230.32 cite N.C. Gen. Stat. § 15A-401 for the law on arrest situations. The trial court incorporated § 15A-401 in its charge under N.C.P.I.-Crim. 230.32. In addition, N.C.P.I.-Crim. 230.32 includes the defense of resisting arrest where it is in response to excessive force; this language is not included in N.C.P.I.-Crim. 230.31.